1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA**

10     **WESTERN DIVISION**

11

12     MALLORY PERRY,                              )     No. CV 17-5164-PLA
                                                    )
13                    Plaintiff,                     )     **MEMORANDUM OPINION AND ORDER**
                                                    )
14            v.                                    )
                                                    )
15     NANCY BERRYHILL, DEPUTY                       )
       COMMISSIONER OF OPERATIONS,                   )
16                                                   )
                      Defendant.                     )
17     _____)

18                                    **I.**

19                              **PROCEEDINGS**

20            Plaintiff filed this action on July 13, 2017, seeking review of the Commissioner's[1] denial of

21     his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

22     payments.  The parties filed Consents to proceed before a Magistrate Judge on July 31, 2017, and

23     August 10, 2017.  Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively

24     _____

25            [1]    On March 6, 2018, the Government Accountability Office stated that as of November 17,
       2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act
26     (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official.  As of
       that date, therefore, she was not authorized to continue serving using the title of Acting
27     Commissioner.  As of November 17, 2017, Berryhill has been leading the agency from her position
       of record, Deputy Commissioner of Operations.
28

"JS") on March 29, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on March 30, 1972. [Administrative Record ("AR") at 50, 219, 225.] He has past relevant work experience as a limo driver, physical therapy aide, and actor. [AR at 49, 104.]

On November 19, 2013, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since August 1, 2011. [AR at 219-24, 225-46.] After his applications were denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 162-63.] A hearing was held on December 3, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 57-116.] A vocational expert ("VE") also testified. [AR at 100-01, 104-10.] On February 24, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from August 1, 2011, the alleged onset date, through February 24, 2016, the date of the decision. [AR at 26-51.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 215-17.] When the Appeals Council denied plaintiff's request for review on May 17, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsbury, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 1, 2011, the alleged onset date.[2] [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairments of healed left ankle fracture; obesity; substance addiction disorder;

---

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2013. [AR at 28.]

4

and organic mental disorder.  [AR at 29.]  The ALJ found the following impairments to be non-severe:  low back pain; hypertension; and left wrist "hernia."  [AR at 36-37.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 37.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> [Plaintiff can] lift or carry, push or pull up to 10 lbs frequently and 20 lbs occasionally; he can stand, sit or walk up to 6 hours in an 8 hour workday; he is limited to simple, routine and repetitive tasks; and his contact with supervisors, co-workers and the public is limited to incidental, as to the work being performed.

[AR at 39.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a limo driver, physical therapy aide, and actor.  [AR at 49-50, 106.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "table worker" (Dictionary of Occupational Titles ("DOT") No. 734.687-014), as a "shirt presser" (DOT No. 363.685-026), and as a "housekeeping-cleaner" (DOT No. 323.687-014).  [AR at 50-51.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of August 1, 2011, through February 24, 2016, the date of the decision.  [AR at 51.]

---

[3]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) rejected the opinion of plaintiff's treating source, Elizabeth Grigor, M.D.; and (2) rejected the opinion of plaintiff's examining source, Edward Ritvo, M.D. [JS at 4-5, 14.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A.    MEDICAL OPINIONS

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

---

[5]    The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Id. at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

/

/

/

**B.     DR. GRIGOR**

Plaintiff argues that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, for giving "minimal weight" to the opinions of treating physician Dr. Grigor. [JS at 4-9.]

Dr. Grigor, who treated plaintiff since June 7, 2012, completed two reports regarding plaintiff's mental health:  a narrative report dated October 22, 2013 [AR at 409-13] and a Mental Residual Functional Capacity Form ("MRFC Form") dated November 5, 2015.  [AR at 1342-46.]

**1.     2013 Report**

In her 2013 report, Dr. Grigor relies on a combination of self reports from plaintiff, her own observations, and a mental status examination.  [AR at 409-13.]  Dr. Grigor reported that plaintiff keeps his appointments but "requires reminders," was dressed casually and "tries to appear clean." [AR at 409.]  However, she also reported that plaintiff's "mannerisms display anxiousness and nervousness," and that his attitude "can be fluctuating from blank and withdrawn to distraught and upset."  [AR at 409, 410.]  Dr. Grigor reported that plaintiff's chief complaints were: "depressed mood, sleep trouble, irritability, anxiety, poor concentration, low energy, flashbacks, hearing voices, [and] paranoia."  [AR at 410.]  Dr. Grigor stated that plaintiff "appears to have average baseline mental capacities; however he frequently experiences functional impairments in terms of diminished concentration."  [Id.]

Dr. Grigor diagnosed plaintiff with schizoaffective disorder; rule out ("R/O") schizophrenia and post-traumatic stress disorder; and polysubstance dependency in full remission.  [AR at 413.] She opined that plaintiff could "conduct simple tasks such as buying food or utilizing public transportation," however, these experiences "cause [plaintiff] significant anxiety."  [AR at 411.] Dr. Grigor concluded that:

> [Plaintiff] is unable to adapt to the requirements of even the most supportive and least stressful workplace.  He experiences persistent anxiety, ruminations, mood swings, poor concentration, that makes him fearful of most social contact.  If he were to attempt to work the most likely outcomes would include non-completion of tasks, inappropriate verbal outburst, unprofessional behavior, or simply absenteeism from the work place due to his mental illness.  . . . His persistent mood, anxiety and paranoia seriously compromise his ability to interact effectively with supervisors,

fellow employees, or clients. Instead he would almost experience disabling anxiety, panic and not complete any assigned work tasks.

[AR at 412.]

The ALJ gave three reasons for giving Dr. Grigor's 2013 opinion minimal weight: (1) "[t]he assessment is nearly 3 years out of date"; (2) "[i]t relies on self-reports by [plaintiff] which have been determined to be less than entirely credible"; and (3) "the assessed limitations also are not consistent with [plaintiff's] own admissions regarding his daily functioning." [AR at 47.]

### a. Out-of-Date Opinion

The ALJ's reason for rejecting Dr. Grigor's opinion because it was "3 years out of date," is not specific and legitimate. First, if Dr. Grigor's October 2013 opinion is outdated then the ALJ should have also considered the March 2014 opinion of the non-examining State agency physician, Absie Kelly, Ph.D., who reviewed, among other things, Dr. Grigor's 2013 opinion, to be almost equally outdated, rather than giving it "great weight." [AR at 49, 123-37.] Second, Dr. Grigor treated plaintiff for over two years after the onset of his alleged disability, and reaffirmed her opinion that he is unable to work in the November 2015 MRFC Form. Thus, being out of date was not a specific and legitimate reason supported by substantial evidence for discounting Dr. Grigor's 2013 opinion.

### b. Self Reports

The ALJ also determined that Dr. Grigor's opinion should be given minimal weight because it relied on plaintiff's self reports and the ALJ determined that plaintiff was "less than entirely credible." [AR at 47.] "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks and citation omitted). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck v. Berryhill, 869 F. 3d 1040, 1049 (9th Cir. 2017). "An ALJ cannot discredit a physician's opinion for relying on plaintiff's self-reports when the physician

[herself] did not discredit plaintiff's reports and makes [her] own observations." Constantino v. Berryhill, 2017 WL 5713313, at *6 (W.D. Wash. Nov. 28, 2017) (citing Ryan, 528 F.3d at 1199-2000, Buck, 869 F. 3d at 1049 (noting that "psychiatric evaluations necessarily rely on self reports, given 'the nature of psychiatry'")).

Dr. Grigor did not discredit plaintiff's self reports in her notes or opinions. Moreover, her opinion was based on her own objective observations and clinical findings about plaintiff's mental state. [AR at 409-10, 524-26, 534, 544.] Therefore, this was not a specific and legitimate reason supported by substantial evidence for giving Dr. Grigor's opinion minimal weight.

### c. Inconsistent Daily Activities

An ALJ may reject a medical opinion regarding a claimant's mental health because the claimant's activities of daily life contradict it, but only if substantial evidence supports that conclusion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistency between doctor's opinion and claimant's "maintaining a household and raising two young children, with no significant assistance from her ex husband" supported discounting the doctor's opinion). The record must provide details about the nature, extent, and frequency of the activities for them to "constitute 'substantial evidence' inconsistent with [a treating physician's] informed opinion." Trevizo, 871 F.3d at 666. If a "holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities," then an inconsistency between a treating physician's opinion and a claimant's daily activities may not be a specific and legitimate reason to discount a treating physician's opinion. Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, the ALJ determined that Dr. Grigor's "assessed limitations . . . are not consistent with [plaintiff's] own admissions regarding his daily functioning." [AR at 47.] In support, the ALJ cited to plaintiff's reported daily activities, including eating breakfast, taking medication, preparing simple meals such as cereal, eggs, and frozen/microwave meals, and taking public transportation. [AR at 40.] The ALJ also cited to plaintiff's social interactions, noting that he would sometimes visit his mother or girlfriend, and that he was able to "interact with peers and others at multiple medical,

sobriety, case management and other meetings on a weekly (or even daily) basis, and engage in other social activity." [AR at 38, 40.] The ALJ, however, failed to explain how these limited activities are inconsistent with Dr. Grigor's opinion.

For instance, while plaintiff noted that he saw his girlfriend and mother occasionally, the nature of these relationships shows that plaintiff has not demonstrated the ability to maintain healthy relationships, and certainly not to the degree that these relationships could serve as evidence supporting an ability to relate to others in a work setting. His divorce from his wife in 2007 contributed to his depression, homelessness, and drug and alcohol abuse. [AR at 29, 30, 35, 36, 432, 1357.] Moreover, his relationship with his girlfriend appeared to involve physical abuse, and it is reported that she now has a restraining order against him. [AR at 887, 1354.] Plaintiff's attendance at AA meetings and other group therapy is not inconsistent with Dr. Grigor's opinion that "[h]is persistent mood, anxiety and paranoia seriously compromise his ability to interact with supervisors, fellow employees, or clients." [AR at 412.] Indeed, the stated therapeutic goals of one of his groups is to help plaintiff "build appropriate social skills" and develop healthy coping and life skills. [AR at 461.] Moreover, while plaintiff did report some improvements from these therapies [AR at 458, 459, 460, 461], he also reported "feeling anxious and afraid of social situations . . . and [that he found] it difficult to express [himself] through Art [sic] in this art group." [AR at 458]; see also Garrison, 759 F.3d at 1017 (citing Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (stating that "doing well for the purposes of a treatment program has no necessary relation to a [plaintiff's] ability to work or to [his] work-related functional capacity")). Finally, the Court is hard-pressed to see how plaintiff's ability to eat breakfast, prepare simple meals using canned foods or the microwave, take medications using a pillbox, and take public transportation, in any way detracts from Dr. Grigor's opinion.

### d. Conclusion

Based on the foregoing, and a "holistic review of the record," none of the reasons provided by the ALJ for giving Dr. Grigor's 2013 opinion "little weight" was specific and legitimate and/or

supported by substantial evidence.[6]  Remand is warranted on this issue.

### 2.    2015 MRFC Form

The ALJ gave Dr. Grigor's 2015 opinion "minimal consideration" because in the 2015 MRFC Form, rather than providing the percentage of time plaintiff's mental impairments preclude any specified task, as requested, Dr. Grigor failed to complete the form properly. [AR at 49.] The ALJ found therefore that he could not determine plaintiff's non-exertional limitations, although Dr. Grigor "appears to agree [plaintiff] can sustain simple tasks, with no limitation regarding his ability to respond to changes in the work setting." [Id.] Indeed, it appears Dr. Grigor merely indicated whether plaintiff was able to perform the specified task ("Yes") or unable to perform the task ("N/A"). [AR at 1342-46.]

Plaintiff concedes that "parts of [Dr. Grigor's 2015] opinion are unclear," but argues that "Dr. Grigor's ultimate opinion that [plaintiff] is still unable to work connects her first opinion to a period closer to the ALJ's decision." [JS at 7.]  Although the 2015 MRFC Form reflects that Dr. Grigor continued to treat plaintiff every 1-3 months since 2013, and had seen him less than one week prior to completing the MRFC Form [AR at 1342], the Court finds that Dr. Grigor's specific findings are indeed unclear. This was a specific and legitimate reason supported by substantial evidence to discredit this particular opinion.

## C.    DR. RITVO

On March 20, 2014, examining psychiatrist[7] Dr. Ritvo conducted a complete psychiatric consultative evaluation of plaintiff. [AR at 425-29.] Dr. Ritvo also reviewed medical records from

---

[6]    Additionally, the ALJ did not discuss "factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician," which the ALJ should have done when he finds -- as he did here -- that the treating physician's opinion is not controlling. Trevizo, 871 F.3d at 676.

[7]    Although the ALJ stated that Dr. Ritvo was a "non-treating, non-examining source," the ALJ also noted that Dr. Ritvo's "evaluation was based on a detailed examination of [plaintiff]." [AR at 49.] Dr. Ritvo's report reflects that he was an examining psychiatrist. [AR at 425-29.]

the California Department of Mental Hygiene EWMHC dated June 7, 2012, where plaintiff had been diagnosed with major depressive disorder with psychotic features, polysubstance abuse dependency, and polysubstance abuse induced psychosis, and was assigned a Global Assessment of Functioning ("GAF") score of 44. At the 2014 examination, plaintiff complained of anxiety, depression, and auditory hallucinations. [AR at 425.] Dr. Ritvo reported that plaintiff is "appropriate in his dress and demeanor," and that he "appears genuine and truthful, [and that] [t]here is no evidence of exaggeration or manipulation." [AR at 427.] Dr. Ritvo also administered several objective psychological tests on plaintiff that, among other things, tested his memory, fund of knowledge, concentration and calculation, proverbs, similarities and differences, and insight and judgment. [AR at 428.] Dr. Ritvo diagnosed plaintiff with chronic organic brain syndrome secondary to polysubstance abuse with auditory hallucinations, and assessed a GAF score of 50. [Id.] He opined that plaintiff has no impairment in his ability to understand, remember or complete simple commands. [AR at 429.] Dr. Ritvo also opined that plaintiff has moderate to severe impairments in the following areas: ability to understand, remember, or complete complex commands; interact appropriately with supervisors, coworkers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting. [Id.]

The ALJ gave Dr. Ritvo's opinion partial but not great weight, because -- as with Dr. Grigor -- the ALJ believed that Dr. Ritvo relied on plaintiff's self-reports, which the ALJ found to be "less than entirely credible."[8] [AR at 49.] However, Dr. Ritvo did not discredit plaintiff's own reports, but

---

[8]     Defendant attempts to demonstrate that plaintiff's self reports are less than entirely credible, by claiming that plaintiff's statements to Dr. Ritvo regarding his auditory hallucinations are inconsistent with his statement to his social worker that his auditory hallucinations were "rare." [JS at 17 (citing AR at 44, 1326).] However, reviewing the record in its entirety, plaintiff reported auditory hallucinations numerous times throughout his course of treatment. [AR at 432, 521, 527, 1349, 1351, 1366.] Moreover, the ALJ did not list this alleged inconsistency as a reason to discount Dr. Ritvo's opinion. Because "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking," Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted), the Court cannot affirm the ALJ's decision on a ground that the ALJ did not consider in making his decision. See Pinto v. (continued...)

rather specifically found that plaintiff appeared truthful, and was not exaggerating. [AR at 427.] Moreover, Dr. Ritvo's diagnosis and functional assessment were based on his own objective observations and clinical testing of plaintiff. For these reasons, as well as the Court's reasoning stated above with respect to the ALJ's identical basis for discounting Dr. Grigor's 2013 opinion, this was not a specific and legitimate reason supported by substantial evidence for the ALJ to discount Dr. Ritvo's opinion.

Additionally, this error was not harmless. When plaintiff's counsel posed a hypothetical to the VE that included the moderate to severe limitations found by Dr. Ritvo, the VE testified that there would be no work available for such an individual. [AR at 108-10.][9] Because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Ritvo's opinion, and because the error was not harmless, remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or

---

[8](...continued)
Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

[9] The Court is not resolving the issue of whether a moderate to severe limitation would result in plaintiff missing three or more days of work a month. This factual determination should be decided on remand.

misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to provide specific and legitimate reasons for discounting the 2013 opinion of Dr. Grigor and the 2014 opinion of Dr. Ritvo, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Grigor and Dr. Ritvo. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. The ALJ shall then reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can perform.[10]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 17, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10]  Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past work.